UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

IN THE MATTER OF HOTEL COAMO SPRINGS.

ABIMAEL HERNÁNDEZ-GONZÁLEZ,

　　Appellant,

　　v.

UNITED STATES TRUSTEE,

　　Appellee.

Civil No. 12-1696 (JAF)

(Rel. Case (B) 75-253)

## **OPINION AND ORDER**

This matter comes to us as an appeal from the bankruptcy court. (Docket No. 1.) Appellant Abimael Hernández-González ("Appellant"), appearing pro se, challenges an order of the bankruptcy court that approved a settlement agreement between the Chapter 7 Trustee ("Trustee" or "Appellee") and Puerto Rico's Tourism Company ("Tourism"). The Trustee and Appellant have each filed appellate briefs. (Docket Nos. 18; 20.) Appellant has filed a reply brief. (Docket No. 26.) As both parties agree, we have jurisdiction pursuant to 28 U.S.C. § 158. For the following reasons, we deny Appellant the relief he seeks and affirm the order of the bankruptcy court.

**I.**

**Background**

We provide a brief sketch of the relevant facts and proceedings. A fuller description of those facts can be found in the docket for the bankruptcy case. (Bankr. No. 75-253.)

Civil No. 12-1696 (JAF)                                                                                          -2-

This appeal comes to us after many years of protracted proceedings.  While the underlying events have a long history, the legal issues presented are fairly straightforward.

In 1958, Dr. Eduardo Maldonado-Sierra purchased a plot of land ("the property") in Coamo.  (Appellant's Brief, Docket No. 18 at 11.)  Maldonado-Sierra planned to develop the property into a resort.  (Id.)  The key attractions would be the thermal hot springs in and around Coamo.  (Id.)  Maldonado-Sierra formed a corporation called Hotel Coamo Springs, Inc. ("HCS"), to develop the property.  (Id. at 12.)  HCS then received a loan from North American Mortgage Investors ("NAMI"), a Massachusetts organization.  (Id.)  HCS got to work developing the property.  (Id.)  In 1973, however, the Commonwealth of Puerto Rico exercised its eminent domain power and acquired the property.  (Id.)  Puerto Rico provided some compensation to HCS for the property.  (Id.)  Appellant, the heir to Maldonado-Sierra, argues that the amount HCS received for the property was too small.  (Id.)

In 1975, HCS voluntarily declared bankruptcy under the 1898 Bankruptcy Act.  (Id.)  A long series of court cases followed in the commonwealth and federal courts, in which the Chapter 7 Trustee and the Commonwealth of Puerto Rico contested the taking and the amount of compensation due for the property.  (Id.)  The bankruptcy judge's opinion below provides a helpful discussion of these cases.[1]  (Opinion and Order, Appellee's Appendix at 691-706.[2])  For our purposes, it is sufficient to note that in 1995, Puerto Rico's Supreme Court remanded the case to the Commonwealth trial court, with instructions to determine the true value of the property, including its underlying thermal hot springs.  E.L.A. v. Hotel Coamo Springs, Co. et al., 138 P.R.R. 37 (1995).

---

[1] See also In Re Interamericas Turnkey Development Co., 94 B.R. 9 (D.P.R. 1988).
[2] Appellee's Appendix, which runs a total of 803 pages, is filed as Docket Nos. 21-1-5.

Civil No. 12-1696 (JAF) -3-

In 1997, the Trustee, here the Appellee, filed a motion in the bankruptcy court to abandon the land. (Appellee's Appendix at 29.) The reasons were stated in the motion. (Id.) Based on the advice of counsel, the trustee had made the following two determinations: 1) the value expected to be recovered for the property would not be enough to cover the first and second mortgages encumbering said recovery; and 2) the bankruptcy estate had no money to pay the experts whose opinions would be necessary to litigate the action. (Id. at 29-30.)

Appellant objected to the Trustee's motion, arguing that the Trustee had underestimated the true value of the property and its underlying thermal hot springs. (Id. at 33.) To back up his claims, Appellant requested an evidentiary hearing in the bankruptcy court. (Id.) Appellant promised then that he would bring expert witnesses to provide an appraisal of the land's true value. (Id. at 35.) By August 1999, however, Appellant had made no significant progress toward obtaining this appraisal. (Id. at 13, 53, 752.) The bankruptcy court therefore granted the Trustee's motion to abandon the land, and closed the case. (Id. at 3, 24, 752.)

Appellant moved for reconsideration. (Id. at 4.) Again he promised that he would prove the property's true value by submitting expert appraisals. (Id.) The bankruptcy court re-opened the case, giving Appellant the opportunity he sought. (Id. at 13-14.) For several years, until 2011, the bankruptcy court waited patiently for Appellant to provide the much-promised expert appraisal. (Id.) Nevertheless, despite numerous progress reports, the appraisal never came. (Id.) Nor were any of the parties able to recover additional funds for the benefit of the estate. (Id.) Finally, in August 2011, the bankruptcy court ordered the property abandoned and closed the case. (Id.)

Civil No. 12-1696 (JAF)                                                                                            -4-

This time, the Trustee filed a motion for partial reconsideration. (Id.) In its motion, the Trustee requested that the bankruptcy court reopen the case for the limited purpose of distributing $533,432.63 to the estate's creditors. (Id. at 14.) $533,432.63 was the amount of compensation that the commonwealth courts and the government of Puerto Rico had earlier determined to be the value of the property (including the land and underlying thermal hot springs), plus interest. (Bankr. No. 75-253, Docket No. 155 at 5-6.) The bankruptcy court granted the motion and ordered Tourism to pay $533,462.63 to the Trustee for the benefit of the estate. (Id. at 3, 14.) Tourism moved for reconsideration. (Id. at 15.) Tourism and the Trustee then began negotiations to settle Tourism's debt with the Trustee. (Id. at 762.) On May 3, 2012, the parties reached a settlement stipulation in which Tourism would pay $534,513.35 to the Trustee. (Id.) In return, the Trustee agreed to relinquish any claims it had against the Commonwealth of Puerto Rico or Tourism. (Id.) The Trustee submitted a motion to the bankruptcy court, requesting approval of the settlement. (Id. at 16, 17, 763.) On July 23, 2012, the bankruptcy court approved the settlement stipulation in a cogent written order. (Id. at 18, 23-24.) That order approving the settlement is the subject of this appeal.

## II.

## **Discussion**

In his brief, Appellant makes the following arguments: the Trustee lacked authority to negotiate the settlement; the bankruptcy court lacked jurisdiction to approve of the settlement agreement; the settlement did not comport with due process and lacked the participation of the indispensable parties; and, finally, the settlement was not in the best

Civil No. 12-1696 (JAF)                                                                                             -5-

interest of the estate. (Docket No. 18 at 2.)  For the reasons that follow, we reject each of Appellant's arguments, and affirm the order of the bankruptcy court.

First, we note that "[b]ecause [HCS] filed for bankruptcy in 197[5], prior to the 1978 enactment of the Bankruptcy Code, the terms of the bankruptcy . . . are governed by the Bankruptcy Act of 1898." Boston and Maine Corp. v. Massachusetts Bay Transp. Auth., 587 F.3d 89, 98 (1st Cir. 2009).  To the extent that the law developed under the modern Bankruptcy Code "is not a departure from, but rather a codification of, the pre-Code case law," modern law is applicable.  In Re Miracle Enterprises, Inc., 57 B.R. 133, 135 (D.R.I. 1986) (citing In re United Merchants and Manufacturers, Inc., 674 F.2d 134 (2d Cir.1982)).

"Under Section 27 of the Bankruptcy Act of 1898 ("Bankruptcy Act"), 11 U.S.C. § 50 (1976) (repealed 1978), a trustee 'may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interest of the estate.'" In re A & C Properties, 784 F.2d 1377, 1380 (9th Cir. 1986) (citations omitted).  Thus, Appellant's first two arguments—regarding the powers of the Trustee and the bankruptcy court to enter into and approve settlement agreements, respectively—fail, according to the express terms of the statute.[3]

Next, Appellant argues that the bankruptcy court's approval of the settlement did not comport with due process, because Appellant was not granted an opportunity to oppose. (Docket No. 18 at 21-22.)  This claim is clearly contradicted by the record.  Moreover, the Trustee is correct that a hearing was not required under Bankruptcy Rule 9019 or Local Bankruptcy Rule 9013-1 ("PR LBR 9013-1"). (Docket No. 20 at 27.)

---

[3] These arguments appear at pages 16 and 26 of Appellant's brief.  (Docket No. 18 at 16, 26.)

Bankruptcy Rule 9019(a) provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." But as the statutory rules of construction make clear, the term "after notice and a hearing"

> (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
> (B) authorizes an act without an actual hearing if such notice is given properly and if--
> (i) such a hearing is not requested timely by a party in interest; or
> (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.

11 U.S.C. § 102.

Local Bankruptcy Rule 9013-1 is similar. That rule provides that "[t]he court may act upon a motion without a hearing under appropriate circumstances, including the following:

> (1) if no objection is filed within the times prescribed in subsection (h);
> (2) prior to the expiration of any applicable objection period, if the motion is:
> (A) a non-adversarial motion of a routine nature;
> (B) a motion to which all affected parties in interest have consented;
> (C) a motion that is without merit in light of the law and the established facts of the case; or
> (D) a motion that is opposed only by objections which are, given the law and the established facts of the case, without merit.

PR LBR 9013-1.

In this case, the bankruptcy court's action complied with Bankruptcy Rule 9019(a) and Local Rule 9013-1. The docket shows that the Trustee notified Appellant of the

Civil No. 12-1696 (JAF) -7-

proposed settlement on May 3, 2012.[4] In addition to the normal 21-day period to object to the settlement, Appellant was then granted two extensions, allowing a total of 66 days to oppose. (Appellee's Appendix at 729-751.) On July 11, 2012, Appellant filed his opposition to the settlement. (Id. at 744.) This opposition, as the Trustee points out, was filed after the last extension had expired. (Id. at 18.)

On this record, the bankruptcy court had more than one adequate ground for acting on the motion without a hearing. (Docket No. 20 at 27.) First, the bankruptcy court's action was justified based on Appellant's failure to timely object. See PR LBR 9013-1-1. Additionally, the bankruptcy court's action appears justified under section 2(d) of Local Rule 9013-1, given that Appellant's objections were "without merit." PR LBR 9013-1-2(d). The bankruptcy court's action was also justified under Federal Rule 9019(a), in light of the flexible rule of construction contained at 11 U.S.C. § 102(B). See Matter of Sullivan Ford Sales, 2 B.R. 350, 354 (Bankr. D. Me. 1980) ("After notice and a hearing' has a much different meaning than does such plain language as 'the court shall hold a hearing,' appearing elsewhere in the Code. There was complete awareness on the part of the principal congressional architect of the Code that 'after notice and a hearing' did not contemplate a hearing in every instance. Indeed, that result was fully intended."). In sum, we agree with the bankruptcy court: "Clearly, parties in interest, including Mr. Abimael Hernandez have been given due notice of the stipulation and a reasonable period of time to file objections. Any allegation to the contrary has no basis." (Order, Appellee's Appendix at 751.)

---

[4] The certificate of service is also included. (Appellee's Appendix at 730; Bankr. No. 75-253, Docket No. 189.) Contradicting his own arguments, Appellant acknowledges in his brief that he was notified of the settlement stipulation on May 4, 2012. (Docket No. 18 at 16.)

Civil No. 12-1696 (JAF)                                                                                           -8-

Appellant next argues, without citing to any authority, that the settlement lacked the participation of the indispensable parties. (Docket No. 18 at 22.) Appellant argues that Puerto Rico's Tourism Company was not an adequate representative of the Commonwealth of Puerto Rico in the settlement. (Id.) This argument is nonsensical. Tourism was the official record owner of the land, and the entity responsible for compensating the estate for the value of the land. (Appellee's Appendix at 686, 694, 701.) As such, Tourism was clearly the appropriate party to enter into this settlement agreement with the Trustee.

Finally, Appellant argues that the settlement agreement was not in the best interest of the estate. Again we disagree. "[T]he decision whether to approve a proposed compromise of a claim under section 27 of the Bankruptcy Act, 11 U.S.C. s 50 (repealed 1978) turns on the court's assessment of 'the best interest of the estate.' In making that assessment, the court is to consider the probability of success of the litigation, the difficulties of discovery, the complexity, expense, and delay incurred by the litigation, and the paramount interest of the creditors." In re Continental Inv. Corp., 637 F.2d 8, 11 (1st Cir. 1980) (citing TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968); Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir. 1929)). The First Circuit has applied an abuse of discretion standard to the approval of settlements. See id. (reviewing district court's approval of settlement).

Judged against this standard, Appellant's argument fails. The bankruptcy court considered all of the relevant factors in its order. In pertinent part, the bankruptcy court stated:

> This Act case has been before the court for over thirty-six (36) years. . . . $534,513.35 is the only value which the estate has been able to realize since the trustee moved for the abandonment of the remaining property of the estate on May 9, 1997 . . . . From the year 2000 to this date the trustee and Mr.

> Abimael Hernandez have attempted to recover funds for the benefit of the estate. Parties in interest, and Mr. Abimael Hernandez, in particular, have been given ample time and opportunities to pursue actions to recover funds for the benefit of the estate. No recovery has been obtained. In light of the foregoing, the court finds that the stipulation is in the best interest of the estate, and therefore, approves the same.

(Order, Bankr. No. 07-253, Docket No. 203.)

During the 36-year travel of the case, the bankruptcy court had ample opportunity to evaluate "the probability of success of the litigation, the difficulties of discovery, the complexity, expense, and delay incurred by the litigation, and the paramount interest of the creditors." In Re Continental, 637 F.2d at 11. By 2012, it was clear that each of these Continental factors weighed in favor of approving the settlement stipulation. The bankruptcy court's summation of the protracted history of the case demonstrated that any future recovery was unlikely. If the true value of the property were as clear as Appellant maintains, he or one of the creditors would likely have discovered its value by 2012. After all, Appellant was not the only creditor with an interest in receiving a larger recovery. In addition to NAMI, which had a secured loan of $2,436,360, there were two additional creditors who had claims on the property: Empresas Tito Castro, for $250,000, and Interamericas Turnkey Development Company, for $659,362. (Appellee's Appendix at 133, 144.) None of these creditors objected to the settlement stipulation. If these parties—who were presumably sophisticated and familiar with this case—believed that this settlement was not objectionable, their judgment is entitled to some respect.

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious

Civil No. 12-1696 (JAF)                                                                                              -10-

claims." In re A & C Properties, 784 F.2d at 1380-81 (internal citations omitted). These are exactly the goals served by the compromise in this case. By settling the estate's claims against Tourism, the Trustee avoided prolonged, costly litigation that had dim prospects for success. Moreover, "[t]he law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." Id. at 1381 (internal citations omitted). As we have already stated, the bankruptcy court's order adequately considered the relevant factors. We, thus, have little trouble concluding that the bankruptcy court's order was well within its discretion.

## III.

## Conclusion

For the foregoing reasons, the ruling of the bankruptcy court is **AFFIRMED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 16th day of May, 2013.

```
                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        United States District Judge
```